**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:**

WHITNEY LEIGH FAIR and JANELLE LAUREN SMILEY,

      Plaintiffs,

v.

GREGORY TONY, as SHERIFF OF BROWARD COUNTY, and
JEFFREY MELLIES, individually,

      Defendants.

_____/

# COMPLAINT

1)     This a civil action seeking money damages in excess of $30,000 dollars, exclusive of costs and interest against GREGORY TONY, as SHERIFF OF BROWARD COUNTY, and JEFFREY MELLIES, individually.

2)     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988; and 18 U.S.C. §§ 2721 - 2725. The United States District Court for the Southern District of Florida has jurisdiction of this action under 18 U.S.C. §§ 2721 - 2725, 42 U.S.C. §§ 1983 and 1988, 28 U.S.C. §§ 1331 and 1343. Venue is proper in this court because the violations alleged occurred within this court's geographical district.

# PARTIES

3)     At all times material, Plaintiff WHITNEY LEIGH FAIR ["FAIR"] was a resident of Broward County, Florida, and was *sui juris*.

-1-

4)      At all times material, Plaintiff JANELLE LAUREN SMILEY ["SMILEY"] was a resident of Broward County, Florida, and was *sui juris*.

5)      At all times material, Wendy Marina Anderson ["Anderson"] was a resident of Broward County, Florida, and was *sui juris*. Anderson is not a party to this litigation.

6)      At all times material, Jason Langemack ["Langemack"] was a resident of Broward County, Florida, and was *sui juris*. Langemack is not a party to this litigation.

7)      Defendant, GREGORY TONY ["SHERIFF"or "BSO"] is the Sheriff of Broward County, Florida, as organized and existing under the Florida Constitution and laws of the State of Florida. GREGORY TONY is sued in his official capacity. DEFENDANT TONY, as Sheriff of Broward County, Florida, acted through his agents, employees, deputy sheriffs, and servants.

8)      At all times material hereto, Defendant JEFFREY MELLIES ["MELLIES"] was over 18 years of age and was *sui juris*.

9)      At all times material, Defendant MELLIES was a deputy sheriff, employee, agent and a law enforcement officer of BSO and is being sued in his individual capacity. At all times material, Defendant MELLIES was acting under the color of state law and in the course and scope of his employment for Defendant SHERIFF.

## **FACTS**

10)     At all times relevant, Defendant SHERIFF utilizes a variety of databases and reports to assist in criminal investigations and to gather information and intelligence in such investigations.

11)     One such database is the Driver and Vehicle Identification Database ["DAVID"].

12)     DAVID is a multifaceted Florida database that affords immediate retrieval of driver and motor vehicle information that is indispensable for law enforcement and criminal justice officials. It allows law enforcement to identify the owners of vehicles as well as identify the registered owner of a license tag and the vehicle to which it is assigned. It also permits law enforcement to obtain copies of a license holder's driver license photograph, driver license or identification card number, social security number, motor vehicle and driver license record, name, address, telephone number, medical or disability information, contained in the person's motor vehicle and driver license records.

13)     The Driver Privacy Protection Act, 18 U.S.C. §§ 2721-2725 ["DPPA"] seeks to protect individuals from corporations, states, state officials and others improperly obtaining, disclosing, or using "personal information" and "highly restricted personal information" from a "motor vehicle record."

14)     "Motor vehicle record" is defined in 18 U.S.C. § 2725(1) as

Any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles.

15)     "Person" is defined in 18 U.S.C. § 2725(2) as

An individual, organization or entity, but does not include a State or agency thereof.

16)     "Personal information" is defined in 18 U.S.C. § 2725(3) as

Information that identified an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

17)     "Highly restricted personal information" is defined in 18 U.S.C. § 2725(4) as

An individual's photograph or image, social security number, medical or disability information.

18)     "Express consent" is defined in 18 U.S.C. § 2725(5) as

Consent in writing, including consent conveyed electronically that bears an electronic signature as defined in section 106(5) of Public Law 106–229.

19)     The Sheriff is a person as defined by 18 U.S.C. § 2725(4).

20)     The DAVID database is managed by the Florida Department of Highway Safety and Motor Vehicles ["HSMV"]. DAVID stores driver license and motor vehicle records which contain both "personal information" and "highly restricted personal information."

21)     18 U.S.C. § 2724, states, in its entirety:

    **(a)**    **Cause of action.**—

    A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter [18 U.S.C. §§ 2721 - 2725] shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

    **(b)**    **Remedies.**—The court may award—

    (1) actual damages, but not less than liquidated damages in the amount of $2,500;

    (2) punitive damages upon proof of willful or reckless disregard of the law;

    (3) reasonable attorney's fees and other litigation costs reasonably incurred; and

    (4) such other preliminary and equitable relief as the court determines to be appropriate.

22)    All data contained within the DAVID system is sensitive and protected under the Driver Privacy Protection Act, 18 U.S.C. §§ 2721-2725.

23)    Florida and federal law mandate that a driver license holder provide his or her social security number to the HSMV and the state of Florida in order to obtain a driver license.

24)    A social security number is intimate personal information given to the HSMV and the state of Florida in confidence. Over the past twenty years, one's social security number has progressed to the level of extreme privacy in light of the volume of instances of identity theft and attempts at identity theft utilizing the social security number. Social security number holders are cautioned on a daily basis to keep their social security numbers private and not to disclose them. The Social Security Administration (SSA) has stated and issued publications stating that it protects the individual's social security number and that it keeps an individuals's social security number confidential. The SSA will not give a social security number to anyone unless authorized by law.

25)    Anderson, Langemack, the "others", and Plaintiffs SMILEY and FAIR provided their social security numbers to HSMV as required with their understanding that their social security numbers would remain confidential and not accessible to the public.

26)    At all times relevant, Plaintiff SMILEY owned one or more motor vehicles registered with the HSMV, and held a Florida driver license issued by HSMV. To obtain her driver license and register her motor vehicle with HSMV, Plaintiff SMILEY was required to, and did, provide HSMV with "personal information" and "highly restricted personal information" as defined in 18 U.S.C. § 2725.

27)    At all times relevant, Plaintiff FAIR owned one or more motor vehicles registered with the HSMV, and held a Florida driver license issued by HSMV. To obtain her driver license and

register her motor vehicle with HSMV, Plaintiff FAIR was required to, and did, provide HSMV with "personal information" and "highly restricted personal information" as defined in 18 U.S.C. § 2725.

28)     At all times relevant, Anderson owned one or more motor vehicles registered with the HSMV, and held a Florida driver license issued by HSMV. To obtain her driver license and register her motor vehicle with HSMV, Anderson was required to, and did, provide HSMV with "personal information" and "highly restricted personal information" as defined in 18 U.S.C. § 2725.

29)     At all times relevant, Langemack owned one or more motor vehicles registered with the HSMV, and held a Florida driver license issued by HSMV. To obtain his driver license and register his motor vehicle with HSMV, Langemack was required to, and did, provide HSMV with "personal information" and "highly restricted personal information" as defined in 18 U.S.C. § 2725.

30)     At all times relevant, "others" owned one or more motor vehicles registered with the HSMV, and held a Florida driver license issued by HSMV. In order to obtain a driver license and register a motor vehicle with HSMV, each of the "others" was required to, and did, provide HSMV with "personal information" and "highly restricted personal information" as defined in 18 U.S.C. § 2725.

31)     HSMV entered into the DAVID system the "personal information" and "highly restricted personal information" of Anderson, Langemack, the "others", and Plaintiffs SMILEY and FAIR which included records pertaining to motor vehicle operators' permits, motor vehicle titles, motor vehicle registration, color photograph or image, social security number, date of birth, state of birth, detailed vehicle registration information and description, prior and current home and mailing addresses, emergency contacts and those contacts private and highly-restricted personal information.

32)     HSMV granted the Defendant SHERIFF access to DAVID.

33)     Permissible access by Defendant SHERIFF and his employees is strictly limited to law enforcement purposes and may only be accessed for legitimate reasons.

34)     Unauthorized use includes, but is not limited to, queries not related to a legitimate business purpose, personal use, dissemination, sharing, copying or passing of DAVID information to unauthorized users.

35)     Activity associated with any aspect of the DAVID system is subject to detailed monitoring and audits by the HSMV to protect against improper or unauthorized use.

36)     Defendant SHERIFF granted Defendant MELLIES unlimited access to DAVID. More specifically, Defendant MELLIES was authorized to use the Defendant SHERIFF's premises and computers to access the DAVID system as part of his job duties relating to law enforcement.

37)     On or about March 14, 2018, without the express consent of Plaintiff SMILEY, defendant MELLIES knowingly obtained, disclosed or used personal information, from the motor vehicle record and DAVID record of Plaintiff SMILEY, for a purpose not permitted by the DPPA by requesting "personal information" and "highly restricted personal information" from the DAVID record of SMILEY in eleven (11) distinct requests and obtaining eleven (11) distinct responses from DAVID containing "personal information" and "highly restricted personal information" from the DAVID record of SMILEY. MELLIES performed these actions not for any authorized purpose, and for a purpose not permitted under 18 U.S.C. §§ 2721 - 2725, the DPPA.

38)     On or about July 19, 2018, without the express consent of FAIR, defendant MELLIES knowingly obtained, disclosed or used personal information, from the motor vehicle record and DAVID record of FAIR, for a purpose not permitted by the DPPA by requesting "personal information" and "highly restricted personal information" from the DAVID record of FAIR in nine

(9) distinct requests and obtaining nine (9) distinct responses from DAVID containing "personal information" and "highly restricted personal information" from the DAVID record of FAIR. MELLIES performed these actions not for any authorized purpose, and for a purpose not permitted under 18 U.S.C. §§ 2721 - 2725, the DPPA.

39)     On or about September 10, 2018, without the express consent of Anderson, defendant MELLIES knowingly obtained, disclosed or used personal information from the motor vehicle record and DAVID record of Anderson, for a purpose not permitted by the DPPA by requesting "personal information" and "highly restricted personal information" from the DAVID record of Anderson in three (3) distinct requests and obtaining three (3) distinct responses containing "personal information" and "highly restricted personal information" from the DAVID record of Anderson. MELLIES performed these actions not for any authorized purpose, and for a purpose not permitted under 18 U.S.C. §§ 2721 - 2725, the DPPA.

40)     On or about February 24, 2018, without the express consent of Langemack, defendant MELLIES knowingly obtained, disclosed or used personal information from the motor vehicle record and DAVID record of Langemack, for a purpose not permitted by the DPPA by requesting "personal information" and "highly restricted personal information" from the DAVID record of Langemack in eight (8) distinct requests and obtaining eight (8) distinct responses containing "personal information" and "highly restricted personal information" from the DAVID record of Langemack. MELLIES performed these actions not for any authorized purpose, and for a purpose not permitted under 18 U.S.C. §§ 2721 - 2725, the DPPA.

41)     Without the express consent of "others," defendant MELLIES knowingly obtained, disclosed or used personal information, from the motor vehicle record and DAVID record of

"others," for a purpose not permitted by the DPPA by requesting "personal information" and "highly restricted personal information" from the DAVID record of "others" in distinct requests and obtaining distinct responses from DAVID containing "personal information" and "highly restricted personal information" from the DAVID record of "others." MELLIES performed these actions not for any authorized purpose, and for a purpose not permitted under 18 U.S.C. §§ 2721 - 2725, the DPPA.

42)     At all times relevant, MELLIES was acting within the course and scope of his employment when he obtained, disclosed or accessed the personal information of SMILEY, FAIR, Anderson, Langemack, and "others" from the DAVID system for an unlawful and unauthorized purpose.

43)     The violations of the DPPA by Defendant MELLIES were taken with apparent and/or actual authority as an deputy sheriff, employee, agent and a law enforcement officer of BSO. The DPPA provides a vicarious liability cause of action and creates a form of tort liability.

44)     The actions of MELLIES as described, including in paragraphs 37 - 42, constitute violations of 18 U.S.C. § 2724 and the DPPA, were part of a common scheme and plan of MELLIES to commit violations of 18 U.S.C. § 2724 and the DPPA, and were taken under color of law.

45)     MELLIES performed the actions described in paragraphs 37 - 42 with the intent to further the SHERIFF'S interest, was conduct of the kind he was employed to perform, the conduct occurred substantially within the time and space limits authorized or required by the work to be performed, and the conduct was activated, at least in part, for a purpose to serve the SHERIFF including investigating individuals for suspicion of criminal activity.

46)     To ensure misuse of the DAVID system did not occur by individuals with DAVID access ["users"], Defendant SHERIFF was required to submit Control and other reports to the HSMV including the Division of Motorist Services' Bureau of Records Data Listing Unit.

47)     As a custom and policy, Defendant SHERIFF failed to timely prepare Control and other reports and submit them as required. As a custom and policy, when the reports were prepared, they were not properly prepared and were not submitted as required. Further, as a custom and policy, the SHERIFF failed to submit attestations and annual certification statements.

48)     As a custom and policy, Defendant SHERIFF failed to conduct investigations, detailed monitoring, and audits to protect against improper, unauthorized, or improper use of the DAVID system.

49)     As a custom and policy, Defendant SHERIFF applied its discipline system for DAVID use violations such that the administrative sanctions and disciplinary actions for such violations were minimal in nature, if at all, and not commensurate with the levels of violations.

50)     Defendant SHERIFF, via the unbridled access to DAVID granted to its employees, by its policies, customs, and usages, permitted widespread flagrant misuse and abuse of DAVID and the DPPA.

51)     The failure of the Defendant SHERIFF to implement remotely reasonable controls, rules, regulations, policies, or mechanisms to prevent flagrant and consistent misuse and abuse of DAVID and the DPPA by its employees constitutes the deliberate indifference to the statutorily protected and constitutional rights of Plaintiffs FAIR and SMILEY, Anderson, Langemack, and "others."

52)     Defendant SHERIFF had actual or constructive notice that its policies, customs or usages were woefully inadequate to prevent widespread and flagrant misuse and abuse of DAVID and the DPPA by its employees.

53)     The deliberate indifference of Defendant SHERIFF was the cause-in-fact, proximate cause, and moving force behind the violations committed by MELLIES.

54)     The Sheriff had a systemic practice of covering up incidents of incorrect, illegal and improper use, abuse and violations of the DAVID system and the DPPA, and represent an official policy of the SHERIFF.

55)     As a result of the actions and inactions of Defendant SHERIFF, it was common knowledge and understanding among employees of Defendant SHERIFF, including MELLIES, that violations and suspected violations of the DAVID system and the DPPA would not be routinely investigated and that any violation would not receive a significant sanction including no punishment at all. As a result, SHERIFF deputies knew that their work would not be reviewed for failure to follow policy or procedure. Consequently, deputies knew that they would not suffer any discipline as a result of a violation of the DAVID system and the DPPA.

56)     42 U.S.C. § 1983 states, in pertinent part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

57)     The policies, procedures, practices, and acts of Defendants SHERIFF and MELLIES subjected PLAINTIFFS FAIR and SMILEY, Anderson, and Langemack to the deprivation of their

rights to privacy, as secured to them by the Constitution of the United States and the DPPA, and are therefore in violation of 42 U.S.C. § 1983.

58) MELLIES willfully and recklessly disregarded the law, the Constitution, the DAVID system, and the DPPA, entitling SMILEY and FAIR to punitive damages under the DPPA, 18 U.S.C. § 2724(b)(2), and 42 U.S.C. §§ 1983 and 1988.

# CAUSES OF ACTION

## COUNT 1

### VIOLATION OF 18 U.S.C. § 2724 AND THE DPPA CLAIM BY PLAINTIFFS FAIR AND SMILEY AGAINST DEFENDANT MELLIES

For their cause of action against Defendant MELLIES in Count 1, Plaintiffs FAIR and SMILEY state:

59) Plaintiffs FAIR and SMILEY reallege and adopt, as if fully set forth in Count 1, the allegations of paragraphs 1 through 58.

60) MELLIES performed the actions described in paragraphs 37 - 42, not for any authorized purpose, and for a purpose not permitted under 18 U.S.C. §§ 2721 - 2725, the DPPA.

61) Plaintiffs FAIR and SMILEY suffered and continue to suffer harassment, risk of economic harm and identity theft by virtue of their "personal information" or "highly restricted personal information" being impermissibly obtained, disclosed or used by Defendant MELLIES.

62) Plaintiffs FAIR and SMILEY are entitled to damages set forth in 18 U.S.C. § 2724.

63) As a direct and proximate result of the acts described above, Plaintiffs FAIR and SMILEY suffered grievously and were brought into public scandal with great humiliation, endured

emotional distress in the form of shame, degradation, mental suffering, and suffered damaged reputations.

64)      Plaintiffs FAIR and SMILEY suffered damages, including pain and suffering, mental anguish and emotional distress, economic damages, and loss of capacity to enjoy life.

65)      The losses and damages are either permanent or continuing in nature and Plaintiffs FAIR and SMILEY will suffer the losses and damages in the future.

66)      The actions of Defendant MELLIES were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress Plaintiffs FAIR and SMILEY and were done with a reckless or callous indifference to the rights, privileges and immunities of Plaintiffs FAIR and SMILEY.

WHEREFORE, Plaintiffs FAIR and SMILEY pray in regard to Defendant MELLIES:

(a)      Judgment for actual damages, but not less than liquidated damages in the amount of $2,500 per violation of the DPPA and 18 U.S.C. § 2724;

(b)      Judgment for punitive damages;

(c)      Judgment pursuant to 18 U.S.C. §2724 for attorney's fees and other litigation costs reasonably incurred; and

(d)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 2

## VIOLATION OF 18 U.S.C. § 2724 AND THE DPPA CLAIM BY PLAINTIFFS FAIR AND SMILEY AGAINST DEFENDANT SHERIFF

For their cause of action against Defendant SHERIFF in Count 2, Plaintiffs FAIR and SMILEY state:

67)     Plaintiffs FAIR and SMILEY reallege and adopt, as if fully set forth in Count 2, the allegations of paragraphs 1 through 58.

68)     MELLIES, as a deputy sheriff, employee, agent and a law enforcement officer of Defendant SHERIFF performed the actions described in paragraphs 37 - 42 not for any authorized purpose, and for a purpose not permitted under 18 U.S.C. §§ 2721 - 2725, the DPPA.

69)     Plaintiffs FAIR and SMILEY suffered and continue to suffer harassment, risk of economic harm and identity theft by virtue of their "personal information" or "highly restricted personal information" being impermissibly obtained, disclosed or used by Defendant MELLIES.

70)     Plaintiffs FAIR and SMILEY are entitled to damages set forth in 18 U.S.C. § 2724.

71)     As a direct and proximate result of the acts described above, Plaintiffs FAIR and SMILEY suffered grievously and were brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering, and suffered damaged reputation.

72)     Plaintiffs FAIR and SMILEY suffered damages, including pain and suffering, mental anguish and emotional distress, economic damages, and loss of capacity to enjoy life.

WHEREFORE, Plaintiffs FAIR and SMILEY pray in regard to Defendant SHERIFF:

(a)     Judgment for actual damages, but not less than liquidated damages in the amount of $2,500 per violation of the DPPA and 18 U.S.C. § 2724;

(b)      Judgment pursuant to 18 U.S.C. §2724 for attorney's fees and other litigation costs

reasonably incurred; and

(c)      Such other preliminary and equitable relief as the court determines to be appropriate.

## COUNT 3

### DPPA STATUTORY PRIVACY RIGHTS VIOLATIONS CLAIMS BY PLAINTIFFS FAIR AND SMILEY AGAINST DEFENDANT MELLIES PURSUANT TO 42 U.S.C. § 1983

For their cause of action against Defendant MELLIES in Count 3, Plaintiffs FAIR and SMILEY

state:

73)      Plaintiffs FAIR and SMILEY reallege and adopt, as if fully set forth in Count 3, the

allegations of paragraphs 1 through 58.

74)      The acts of Defendant MELLIES subjected Plaintiffs FAIR and SMILEY to the

deprivation of their rights to privacy, as secured to them by the DPPA, and are therefore in violation

of 42 U.S.C. § 1983.

75)      As proximate results of the conduct of Defendant MELLIES, Plaintiffs FAIR and

SMILEY sustained monetary damages, violations of their privacy rights, and exposures to irreparable

harm, for which there is no adequate remedy at law. In redressing the deprivation of substantive

rights secured by the laws of the United States under 42 U.S.C. § 1983, this court has all the powers

of a court of equity and may enter any appropriate order which will effectuate those rights and

implement the intent of Congress in creating such rights.

76)     The actions of Defendant MELLIES were committed under color of state law and violated Plaintiffs FAIR and SMILEY's statutory right of privacy under the DPPA.

77)     Plaintiffs FAIR and SMILEY were required to engage the services of Gary Kollin, Esq., to prosecute this action. Pursuant to 42 U.S.C. § 1988, Plaintiffs FAIR and SMILEY are entitled to awards of attorney fees and costs.

78)     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. §1983 and the DPPA, Plaintiffs FAIR and SMILEY suffered pain and mental anguish, loss of income, loss of abilities to earn money, loss of earnings, brought into public scandal and with great humiliation, mental suffering and damaged reputation and their working abilities were impaired. As a further direct and proximate result Plaintiffs FAIR and SMILEY suffered loss of capacity for the enjoyment of life, and loss of their statutory rights.

WHEREFORE, Plaintiffs FAIR and SMILEY pray in regard to Defendant MELLIES:

a)     Judgment for compensatory damages in excess of $ 30,000 dollars;

b)     Judgment for punitive damages;

c)     Costs of suit;

d)     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 4

## DPPA STATUTORY PRIVACY RIGHTS VIOLATIONS CLAIMS BY PLAINTIFFS FAIR AND SMILEY AGAINST DEFENDANT SHERIFF PURSUANT TO 42 U.S.C. § 1983

For their cause of action against Defendant SHERIFF in Count 4, Plaintiffs FAIR and SMILEY state:

79) Plaintiffs FAIR and SMILEY reallege and adopt, as if fully set forth in Count 4, the allegations of paragraphs 1 through 58.

80) The policies, procedures, practices, and acts of Defendant SHERIFF subjected Plaintiffs FAIR and SMILEY to the deprivation of their rights to privacy, as secured to them by the DPPA, and are therefore in violation of 42 U.S.C. § 1983.

81) As proximate results of the conduct of Defendants SHERIFF and MELLIES, Plaintiffs FAIR and SMILEY sustained monetary damages, violations of their privacy rights, and exposures to irreparable harm, for which there is no adequate remedy at law. In redressing the deprivation of substantive rights secured by the laws of the United States under 42 U.S.C. § 1983, this court has all the powers of a court of equity and may enter any appropriate order which will effectuate those rights and implement the intent of Congress in creating such rights.

82) The actions of Defendant MELLIES were committed under color of state law and violated Plaintiffs FAIR and SMILEY's right of privacy under the DPPA.

83) Plaintiffs FAIR and SMILEY were required to engage the services of Gary Kollin, Esq., to prosecute this action. Pursuant to 42 U.S.C. § 1988, FAIR and SMILEY are entitled to awards of attorney fees and costs.

84) As a direct and proximate result of the acts described above, in violation of 42 U.S.C. §1983 and the DPPA, Plaintiffs FAIR and SMILEY suffered pain and mental anguish, loss of income, loss of abilities to earn money, loss of earnings, brought into public scandal and with great

-17-

humiliation, mental suffering and damaged reputation and their working abilities were impaired. As

a further direct and proximate result Plaintiffs FAIR and SMILEY suffered loss of capacity for the

enjoyment of life, and loss of their statutory right to privacy under the DPPA.

WHEREFORE, Plaintiffs FAIR and SMILEY pray in regard to Defendant SHERIFF:

a)      Judgment for compensatory damages in excess of $ 30,000 dollars;

b)      Costs of suit;

c)      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)      Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 5

### VIOLATION OF THE CONSTITUTIONAL RIGHT TO PRIVACY CLAIM OF PLAINTIFFS FAIR AND SMILEY AGAINST DEFENDANT MELLIES PURSUANT TO 42 U.S.C. § 1983

For their cause of action against Defendant MELLIES in Count 5, Plaintiffs FAIR and SMILEY

state:

85)     Plaintiffs FAIR and SMILEY reallege and adopt, as if fully set forth in Count 5, the

allegations of paragraphs 1 through 58.

86)     Plaintiffs FAIR and SMILEY enjoyed a constitutional right to privacy in their social

security numbers because the numbers were intimate personal information given to the state in

confidence. Plaintiffs FAIR and SMILEY had a reasonable expectation of privacy in their social

security numbers.

87)     The actions of Defendant MELLIES were committed under color of state law and

violated Plaintiffs FAIR and SMILEY's constitutional rights of privacy.

88)     Plaintiffs FAIR and SMILEY have the right to privacy under the Constitution including the Fourth and Fourteenth Amendments.

89)     The actions of Defendant MELLIES were committed under color of state law and violated Plaintiffs FAIR and SMILEY's constitutional rights of privacy.

90)     PLAINTIFFS FAIR and SMILEY were required to engage the services of Gary Kollin, Esq., to prosecute this action. Pursuant to 42 U.S.C. § 1988, FAIR and SMILEY are entitled to awards of attorney fees and costs.

91)     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. §1983 and the DPPA, Plaintiffs FAIR and SMILEY suffered pain and mental anguish, loss of income, loss of abilities to earn money, loss of earnings, brought into public scandal and with great humiliation, mental suffering and damaged reputation and their working abilities were impaired. As a further direct and proximate result Plaintiffs FAIR and SMILEY suffered loss of capacity for the enjoyment of life, and loss of their constitutional, statutory, and civil rights.

WHEREFORE, Plaintiffs FAIR and SMILEY pray in regard to Defendant MELLIES:

a)      Judgment for compensatory damages in excess of $ 30,000 dollars;

b)      Judgment for punitive damages:

c)      Costs of suit;

d)      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 6

### VIOLATION OF THE CONSTITUTIONAL RIGHT TO PRIVACY CLAIM OF PLAINTIFFS FAIR AND SMILEY AGAINST DEFENDANT SHERIFF PURSUANT TO 42 U.S.C. § 1983

For their cause of action against Defendants SHERIFF in Count 6, Plaintiffs FAIR and SMILEY state:

92)     Plaintiffs FAIR and SMILEY reallege and adopt, as if fully set forth in Count 6, the allegations of paragraphs 1 through 58.

93)     Plaintiffs FAIR and SMILEY enjoyed a constitutional right to privacy in their social security numbers because the numbers were intimate personal information given to the state in confidence. Plaintiffs FAIR and SMILEY had a reasonable expectation of privacy in their social security numbers.

94)     The actions of Defendant MELLIES were committed under color of state law and violated Plaintiffs FAIR and SMILEY's constitutional rights of privacy.

95)     Plaintiffs FAIR and SMILEY have the right to privacy under the Constitution including the Fourth and Fourteenth Amendments.

96)     The actions of Defendant MELLIES were committed under color of state law and violated Plaintiffs FAIR and SMILEY's constitutional rights of privacy.

97)     PLAINTIFFS FAIR and SMILEY were required to engage the services of Gary Kollin, Esq., to prosecute this action. Pursuant to 42 U.S.C. § 1988, FAIR and SMILEY are entitled to awards of attorney fees and costs.

98)     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. §1983 and the DPPA, Plaintiffs FAIR and SMILEY suffered pain and mental anguish, loss of income, loss of abilities to earn money, loss of earnings, brought into public scandal and with great

humiliation, mental suffering and damaged reputation and their working abilities were impaired. As a further direct and proximate result Plaintiffs FAIR and SMILEY suffered loss of capacity for the enjoyment of life, and loss of their constitutional, statutory and civil rights.

WHEREFORE, Plaintiffs FAIR and SMILEY pray in regard to Defendant SHERIFF:

a)      Judgment for compensatory damages in excess of $ 30,000 dollars;

b)      Costs of suit;

c)      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 7

### SECTION 1983 FAILURE TO TRAIN & SUPERVISE CLAIM OF PLAINTIFFS FAIR AND SMILEY AGAINST DEFENDANT SHERIFF

For their cause of action against Defendant SHERIFF in Count 7, Plaintiffs FAIR and SMILEY state:

99)     Plaintiffs FAIR and SMILEY reallege and adopt, as if fully set forth in Count 7, the allegations of paragraphs 1 through 58.

100)    This is a cause of action for deprivation of constitutional and statutory rights pursuant to 42 USC § 1983 for failure to train and supervise.

101)    These actions were taken under color of law.

102)    As of the dates of the incidents described, the Defendant SHERIFF permitted and tolerated a pattern and practice of its deputies of violating the DPPA and the DAVID system which amounted to a custom and policy and became the *de facto* policy and custom of the SHERIFF.

103)     Although such acts were improper, deputies involved were not prosecuted, disciplined or subjected to retraining, and some of said incidents were, in fact, covered up with official claims that said acts were justified and proper.

104)     As a result, deputies, including Defendant MELLIES, were caused and encouraged to believe that members of the public could be subjected to violations of their constitutional rights, statutory rights, and their rights under the DPPA, and that said violations would, in fact, be permitted by the Defendant SHERIFF.

105)     The Defendant SHERIFF failed to perform the adequate scrutiny of a reasonable policymaker to conclude that the failure to conduct such a review and discipline would result in the deprivation of the constitutionally and statutorily protected rights of third parties like Langemack and Anderson, Plaintiffs FAIR and SMILEY, and that such failure reflected a conscious disregard for the high risk that Defendant MELLIES would violate the constitutional and statutory rights of Plaintiffs FAIR and SMILEY.

106)     The injuries suffered by Plaintiffs FAIR and SMILEY were the direct result of the previously described acts, omissions, policies or customs of the DEFENDANT SHERIFF.

107)     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. §1983, the DPPA, and the United States Constitution, Plaintiffs FAIR and SMILEY suffered pain and mental anguish, loss of income, loss of abilities to earn money, loss of earnings, brought into public scandal and with great humiliation, mental suffering and damaged reputation and their working abilities were impaired. As a further direct and proximate result Plaintiffs FAIR and SMILEY suffered loss of capacity for the enjoyment of life, and loss of their constitutional, statutory and civil rights.

WHEREFORE, Plaintiffs FAIR and SMILEY pray in regard to Defendant SHERIFF:

a)      Judgment for compensatory damages in excess of $ 30,000 dollars;

b)      Costs of suit;

c)      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)      Such other relief as this Honorable Court may deem just and appropriate.

## **REQUEST FOR JURY TRIAL**

PLAINTIFFS request trial by jury for all causes of action in this matter.

GARY KOLLIN, P.A.
Counsel for PLAINTIFFS
1856 N. Nob Hill Road, Suite 140
Ft. Lauderdale, FL 33322
Telephone:    (954) 723-9999
Fax:         (954) 791-6565
garykollin@garykollinlaw.com
pleadings@garykollinlaw.com

By: /s/ *Gary Kollin*
Florida Bar No. 282431